Hon. Tana Lin

UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | |
|---|---|
| B.G., A MINOR, BY AND THROUGH HER PARENT AND LEGAL GUARDIAN, TIFFANY ST. JOHN,<br>Plaintiff,<br>v.<br>STANLEY STEEMER INTERNATIONAL, INC.,<br>Defendant. | CIVIL ACTION NO. 2:24-CV-2105-TL<br><br>DEFENDANT'S MOTION TO VACATE ENTRY OF DEFAULT AND DEFAULT JUDGMENT UNDER RULE 55(c) AND RULE 60(b)<br><br>**NOTE ON MOTION CALENDAR: October 3, 2025**<br><br>**ORAL ARGUMENT REQUESTED** |

## I. INTRODUCTION

Plaintiff Tiffany St. John claims that her daughter, Bailey Gonzalez,[1] was seriously injured in a car accident caused by a Stanley Steemer employee. While Stanley Steemer's insurer, Continental Casualty Company, was attempting for over a year to gather information about Gonzalez's alleged injuries and to negotiate a settlement, Gonzalez obtained a $5.186 million default judgment against Stanley Steemer without notice.

[1] Bailey Gonzalez was evidently 16 years old when this accident occurred in 2023. She is now 18 years old and the real party in interest. *Order on Motion for Default Judgment* at 2.

This Court should vacate the entry of default and default judgment. A default and default judgment should be vacated for "good cause." All three good-cause factors apply and favor Stanley Steemer.

*First*, Stanley Steemer is not culpable for the default. It has vigorously defended against Gonzalez's negligence claim via its representative, Continental. Continental on Stanley Steemer's behalf admitted liability and settled St. John's property-damage claim in August 2023. It repeatedly tried, both before and after suit, to resolve Gonzalez's personal-injury claim—the subject of this lawsuit—and indicated an intent to Gonzalez's counsel to defend Stanley Steemer. A settlement offer was even pending when Plaintiff sought default in January and default judgment in April.

Stanley Steemer reasonably believed that Continental—its representative—was defending its interests. The same day it received Gonzalez's complaint, Stanley Steemer forwarded it to Continental. Stanley Steemer's insurance policy with Continental gave Continental the right and duty to retain counsel and to direct Stanley Steemer's defense. And their longstanding course of dealing led Stanley Steemer to believe that Continental had retained defense counsel. In every instance where Stanley Steemer tendered claims to Continental, Continental appointed defense counsel and assumed responsibility for defending it. Stanley Steemer had no reason to believe otherwise here.

*Second*, Stanley Steemer has meritorious defenses. Although it admits negligence (duty and breach), it properly disputes causation and damages. Gonzalez's medical records show that many of her claimed injuries predated the accident. Her expert's report undermines her own damages recommendation. And post-accident photos of St. John's car suggest that the impact was minimal.

*Third*, vacating the default and default judgment will not prejudice Gonzalez. Stanley Steemer admits negligence, so Gonzalez need only prove the causation and damages elements of her negligence claim. Nor will she be deprived of obtaining a judgment on the merits.

*Finally*, Stanley Steemer's informal appearance through its representative's negotiations with Plaintiff's counsel and requests for damages information about Gonzalez required Gonzalez to notify Stanley Steemer or its representative of seeking default and default judgment under Rule 55(a), (b)(2).

The causation and damages elements of Gonzalez's negligence claim should be litigated on the merits. Available evidence undercuts those elements. All will benefit—and justice will be served—by a jury's weighing that evidence and awarding damages as they find reasonable and fair. And that damages award will likely be less than this Court's $5.186 million default judgment. So this Court should vacate the default and default judgment against Stanley Steemer, allow Stanley Steemer to conduct discovery on causation and damages, and set this case for trial.

## II. STATEMENT OF FACTS

### A. After a car accident about two years ago, Tiffany St. John negotiated settlement with Stanley Steemer's insurer, Continental, to resolve her property-damage claim.

Bailey Gonzalez got in a car accident in June 2023. *Compl.* ¶¶ 13–14. She was in stopped traffic on southbound Interstate 5 when another car rear-ended her. *Id.* Post-collision photos of Gonzalez's mother's Mercedes-Benz, embedded below, reflect minimal damage to the vehicle:











*Jankowski Decl.* ¶ 4; *see also Heim Decl.* ¶ 4, Ex. 3.

The driver of the other car was Jules Purnell IV, a Stanley Steemer employee. *Compl.* ¶¶ 9–14; *Heim Decl.*, Ex. 2. Stanley Steemer owned the car, and Gonzalez alleged that Purnell was acting within the "course and scope of his employment with Stanley Steemer" when the accident occurred. *Compl.* ¶ 10.

Gonzalez alleges that she was injured in the accident. *Compl.* ¶ 16. She claims that these injuries caused her "permanent harm." *Id.* ¶ 17.

A few days after the accident, Gonzalez's mother, Tiffany St. John, who owned the Mercedes vehicle driven by Gonzalez, contacted Stanley Steemer's insurer, Continental Casualty Company. *Enneking Decl.* ¶ 4; *Heim Decl.* ¶ 3. Continental promptly contacted St. John to discuss the accident and resolving St. John's property-damage claim. *Heim Decl.* ¶¶ 3–8.

A month later, in August 2023, St. John told Continental that she had retained Ryan Pittman as her attorney. *Enneking Decl.* ¶ 4. A week after that, Pittman sent Continental a letter of representation. *Id.*, Ex. 1. Continental admitted liability for the property damages, and that same month St. John and Continental settled the property-damage claim for $11,501.08. *Heim Decl.* ¶ 7.

**B. Both before and after Gonzalez sued for negligence, Stanley Steemer's representative continued negotiating with Gonzalez's counsel to settle her claim.**

Between June 2023 (when the accident occurred) and December 2024 (when Gonzalez filed suit), Continental on Stanley Steemer's behalf repeatedly communicated with Gonzalez's counsel about obtaining damages information and resolving her personal-injury claim. *Enneking Decl.* ¶¶ 4–11. Continental discussed Gonzalez's alleged injuries and medical treatment. *Id.* ¶¶ 6, 9. Continental also negotiated settlement with her counsel. *Id.* ¶¶ 6–11, 14, 19–25.

For instance, in May 2024, Continental appointed Gary Enneking as the claims consultant assigned to investigate and resolve Gonzalez's personal-injury claim. *Id.* ¶ 7. The day after he was assigned the claim, Enneking called Gonzalez's counsel, left a voicemail, and followed up with an email. *Id.* Enneking requested information about Gonzalez's "current treatment plan, medical condition, lost wages and diagnosis." *Id.* ¶ 7, Ex. 2. Enneking sought to "facilitate a resolution" of this claim. *Id.* ¶ 7. Although Gonzalez's counsel acknowledged

Continental's May 2024 email, her counsel ignored every future Continental communication and settlement offer to resolve Gonzalez's claim. *Enneking Decl.* ¶¶ 8–11, 19–26. And he provided none of the basic information Continental requested to investigate, evaluate, and resolve Gonzalez's personal-injury claim. *Id.*

In August 2024, Enneking again called Gonzalez's counsel and left a voicemail requesting Gonzalez's medical records to assess damages. *Enneking Decl.* ¶ 8. Counsel never returned that voicemail. *Id.*

Between September and December 2024, Enneking repeatedly requested from Gonzalez's counsel status updates about the case. *Enneking Decl.* ¶¶ 10–11. Even though Gonzalez's counsel provided none of Enneking's requested information, Enneking still offered $25,000 on Stanley Steemer's behalf to settle Gonzalez's negligence claim last December. *Enneking Decl.* ¶ 11. Gonzalez's counsel returned none of Continental's voicemails or emails and ignored its settlement offer. *Enneking Decl.* ¶¶ 10–11.

A year and a half after the accident—and after negotiations with Continental—St. John filed this lawsuit on her daughter's behalf last December. Dkt. 1; *Enneking Decl.* ¶ 12. At that time, Continental's offer to settle Gonzalez's personal-injury claim was still pending. *Enneking Decl.* ¶ 11.

Stanley Steemer sent the complaint to Continental the same day it received the complaint—the day after Christmas. *Janikowski Decl.* ¶ 4(d). But Continental mistakenly did not save the complaint in its files nor retained counsel to defend Stanley Steemer. *Heim Decl.* ¶ 10; *Enneking Decl.* ¶ 12. Stanley Steemer forwarded the complaint to the claims adjuster assigned to resolve St. John's property-damage claim. *Heim Decl.* ¶ 11. But that claims adjuster does not recall seeing or reading Stanley Steemer's email or the complaint attached to

the email. *Id.* ¶ 10. So that complaint never got saved in Continental's files. *Id.*; *Enneking Decl.* ¶ 12.

Even so, Continental continued to try to negotiate with Gonzalez's counsel to resolve her claim. *Enneking Decl.* ¶ 19. Continental contacted Gonzalez's counsel six times between January and June 2025 to discuss the case and its pending settlement offer. *Id.* ¶¶ 19–25. Gonzalez's counsel returned none of Continental's calls, voicemails, or emails. *Id.*

### C. Gonzalez sought and obtained a nearly $5.2 million default judgment without notifying Stanley Steemer or its representative.

Last January, Gonzalez sought default. Dkt. 10. She gave Stanley Steemer or its representative (Continental) no notice that she intended to seek default. *Enneking Decl.* ¶¶ 19, 27; *Jankowski Decl.* ¶ 7. Her counsel represented under oath that "Defendant has not contacted counsel for Plaintiff or appeared in this action." *Pittman Default Order Decl.* ¶ 7. But her counsel never mentioned that Stanley Steemer's representative (Gary Enneking of Continental) had repeatedly called, emailed, and left voicemails with Plaintiff's counsel to obtain information about Gonzalez's medical treatment and alleged injuries. *Enneking Decl.* ¶¶ 7–11, 19. Nor did her counsel mention that Stanley Steemer's representative had offered to settle Gonzalez's personal-injury claim for $25,000 when Gonzalez sought default. *Id.* ¶¶ 11, 19.

The Clerk entered default in late January. Dkt. 12.

A few months later, she sought a default judgment. Dkt. 15. Once again, she never notified Stanley Steemer or its representative. *Enneking Decl.* ¶ 28; *Jankowski Decl.* ¶ 7. And she argued to this Court that she had no "recourse" to recover absent a default judgment. *Motion for Default Judgment* at 1, 2, 13. But she never informed this Court that, when she sought default judgment, Stanley Steemer's representative had made a pending $25,000 offer to settle her personal-injury claim. *Enneking Decl.* ¶¶ 11, 19.

This Court granted Gonzalez's motion and entered a default judgment of $5,185,673.46 last July. Dkt. 18.

**D. On learning about the default judgment, Continental immediately retained counsel to defend Stanley Steemer.**

Stanley Steemer and Continental did not know that this Court had entered default judgment until over a month later on August 8. *Jankowski Decl.* ¶ 7, Ex. 2; *Enneking Decl.* ¶ 28. Stanley Steemer immediately contacted Continental. *Jankowski Decl.* ¶ 8; *Enneking Decl.* ¶ 28. And Continental retained defense counsel to represent Stanley Steemer. *Enneking Decl.* ¶¶ 17, 28.

Because of Gonzalez's material omissions and misrepresentations to this Court when seeking default and default judgment, Stanley Steemer asked Gonzalez to agree that this Court should vacate the default judgment. *Reynolds Decl.* ¶ 3, Ex. 1. Gonzalez declined. *Id.* ¶ 4. This motion followed.

## III. LEGAL AUTHORITY AND ARGUMENT

**A. Default judgments are disfavored and justified only in extreme circumstances.**

Default judgments are disfavored, so much so that courts will enter them "only in extreme circumstances." *TGI Grp. Life Ins. Plan v. Knoebber*, 244 F.3d 691, 696 (9th Cir. 2001); *see also In re Roxford Foods, Inc.*, 12 F.3d 875, 879 (9th Cir. 1993). Courts should presumptively decide cases on the merits. *Roxford Food*, 12 F.3d at 879; *United States v. Signed Personal Check No. 730 of Yubran S. Mesle*, 615 F.3d 1085, 1089 (9th Cir. 2010) (vacating default judgment). The "burden on a party seeking to vacate a default judgment is not extraordinarily heavy." *Knoebber*, 244 F.3d at 700. And the rules for vacating a default judgment favor those parties, like Stanley Steemer, "whose actions leading to the default were taken without the benefit of legal representation." *Mesle*, 615 F.3d at 1089.

Entry of default should be vacated for "good cause." FED. R. CIV. P. 55(c). A default judgment should be vacated for any reason identified under Rule 60(b). *Id.* "The 'good cause' standard that governs vacating an entry of default under Rule 55(c) is the same standard that governs vacating a default judgment under Rule 60(b)." *Franchise Holding II, LLC v. Huntington Rests. Grp., Inc.*, 375 F.3d 922, 925 (9th Cir. 2004); *see also Sundberg v. Shelton Sch. Dist. No. 309*, No. 3:23-cv-05717, 2024 WL 3818544, at *1 (W.D. Wash. Aug. 14, 2024) (vacating default judgment). So "good cause" includes any reason for relief from a judgment under Rule 60(b). *Franchise Holding*, 375 F.3d at 925–27; *Brandt v. Am. Bankers Ins. Co. of Fla.*, 653 F.3d 1108, 1112 (9th Cir. 2011).

Justification can include mistake, excusable neglect, the opposing party's misrepresentation or misconduct, or improper notice. FED. R. CIV. P. 60(b)(1), (3), (4). Because Rule 60(b) is "remedial" and "must be liberally applied," courts have broad discretion to vacate a default judgment. *Knoebber*, 244 F.3d at 696. And "any doubt should be resolved in favor of setting aside a default judgment." *Roxford Food*, 12 F.3d at 879.

Courts consider three factors to assess good cause:

(1) whether the defendant engaged in "culpable" conduct that led to the default;

(2) whether the defendant had a meritorious defense; and

(3) whether the plaintiff would be prejudiced by reopening the case.

*Franchise Holding*, 375 F.3d at 925–26. And good cause normally suffices to demonstrate "excusable neglect" to vacate a default judgment under Rule 60(b). *Id.* at 927.

**B. This Court should vacate the default and default judgment because each good-cause factor favors Stanley Steemer.**

All three good-cause factors favor Stanley Steemer. First, Stanley Steemer is not culpable because it has defended against Plaintiff's claims. Second, it has meritorious defenses

to Gonzalez's personal-injury claim. And finally, Gonzalez would not be prejudiced if this Court reopened the case.

This Court should set aside the default under Rule 55(c) and default judgment under Rule 60(b) for good cause.

**1. Stanley Steemer is not culpable—it mistakenly did not formally appear but has vigorously defended against Gonzalez's claim.**

A defendant's conduct is culpable only if they knew about a lawsuit and intentionally failed to answer. *Knoebber*, 244 F.3d at 697. Intent is a conscious choice. *Id.* And it is different from excuses or neglect. *Id.*

Stanley Steemer is not culpable. Stanley Steemer did not make a conscious choice not to defend itself. All evidence says the opposite. Stanley Steemer's representative vigorously defended its interests against Gonzalez's personal-injury claim. *Enneking Decl.* ¶¶ 7–11, 19–26. Stanley Steemer also told Continental about this lawsuit. *Jankowski Decl.* ¶ 3. Continental did not hire counsel to defend Stanley Steemer. *Enneking Decl.* ¶ 5. But Continental did everything else, including investigating and negotiating Gonzalez's claim, both before and after suit. *Id.* ¶¶ 7–11, 19–26.

At most, Stanley Steemer made a mistake or engaged in excusable neglect. It timely tendered the defense of this case to its insurer, Continental. *See Jankowski Decl.* ¶ 4. After, Stanley Steemer reasonably believed that Continental would retain litigation counsel to defend it. *Id.* ¶ 4(a–g). This was also normal practice. *Id.*; *Enneking Decl.* ¶¶ 17–18. Because of a mistake, this did not happen.

To circumvent this reality, Gonzalez focuses on what Stanley Steemer should have known. She claims that if Stanley Steemer had done a routine Google search, it would have known about her lawsuit. Dkt. 15 at 16–17. But that is beside the point because Stanley Steemer undisputedly knew about the lawsuit. *See Jankowski Decl.* ¶ 3. The issue is whether Stanley Steemer intentionally did not appear. Stanley Steemer believed that Continental would

retain counsel to defend its interests (as it had done in other cases), so its failure to formally appear was unintentional. *Jankowski Decl.* ¶ 4.

Even if constructive knowledge were the standard, Gonzalez is still wrong. Google is not how Stanley Steemer tracks litigation. *See Jankowski Decl.* ¶ 5. It uses PACER. *Id.* But Stanley Steemer's name was entered incorrectly into PACER when this litigation was filed. *Id.* ¶ 6. The case was recorded as "Stanely"—a misspelling. *Id.* So a search of "Stanley Steemer" or even just "Stanley" would not have disclosed this lawsuit on PACER. *Id.* ¶¶ 5–6.

Stanley Steemer reasonably believed that Continental would retain litigation counsel—as it had done in other cases. *Jankowski Decl.* ¶ 4. It had no reason to think that Continental would not. And nothing suggests that Stanley Steemer culpably failed to answer Gonzalez's complaint or otherwise defend itself.

The first good-cause factor favors Stanley Steemer because it is not culpable. So this Court should vacate the default and default judgment.

**2. Available evidence shows that Stanley Steemer has a meritorious, strong defense to the causation and damages elements of Gonzalez's negligence claim.**

A defendant has a meritorious defense if they allege sufficient facts that, if true, constitute a defense. *Mesle*, 615 F.3d at 1094. This burden is low. *Id.* A defendant need only show a chance that a trial would produce a different outcome. *Haw. Carpenters' Tr. Funds v. Stone*, 794 F.2d 508, 513 (9th Cir. 1986).

Stanley Steemer has a meritorious defense. Because Stanley Steemer admits negligence, this Court need not decide whether Stanley Steemer has a meritorious defense to duty or breach. It need only determine whether a jury might award different damages. And Plaintiff's own facts—let alone Stanley Steemer's alleged facts—show that Stanley Steemer has a meritorious defense to causation and damages.

Gonzalez's health history undermines her damages clam. She claims numerous health problems proximately caused by the accident. Dkt. 15 at 2–7. This includes mental-health issues, cognitive decline, and alcohol abuse. *Id.* Her doctor diagnosed her with a concussion because of the accident and noted that she had post-concussive symptoms. Dkt. 15 (Pittman Decl.) Ex. 2 at 9. And she had PTSD and major depressive disorder with anxiety. *Id.* But before the accident, Gonzalez had a complicated health and social history. For instance, she had four prior concussions playing soccer. *Id.* at 3. She had anxiety and ADHD. *Id.* at 3, 5. And she had a tough home life growing up. *Id.* Ex. 3 at 17.

Gonzalez's expert Cloie Johnson's report also undermines her damages claim. Johnson misleadingly used the wrong range to estimate Gonzalez's alleged wage loss. She used the range for males, but Gonzalez is a female. *Id.* Ex. 6 at 16.

In addition, Johnson's life-care plan for Gonzalez was flawed because it includes alcohol treatment. *Id.* at 18. But Gonzalez started drinking at fourteen—two years before the accident. *Id.* Ex. 3 at 8. And her drinking got steadily worse leading up to the accident. *Id.* It also got worse around a time when Gonzalez was experiencing normal teenage difficulties, such as her best friend moving away and breakups. *Id.* at 9–10. Regrettably, Gonzalez coped with these normal difficulties with excessive alcohol use. Stanley Steemer reasonably disputes that the accident proximately caused Gonzalez's increased alcohol use.

This Court relied on Johnson's materially misleading report to determine its damages award. Johnson offered a special-damages range of around $1.45 million to $2.46 million. *Id.* Ex. 6 at 21. And this Court awarded around the midpoint of that range—$1.75 million. Dkt. 18 at 16. Stanley Steemer will offer a rebuttal expert that challenges that calculation. And a jury critically reviewing Johnson's report, along with Stanley Steemer's rebuttal evidence, would likely award a different damages amount.

Bottom line—Stanley Steemer admits negligence, but it still has a meritorious causation and damages defense. Stanley Steemer should be allowed to litigate the merits of that claim. Because the second-cause cause factor favors Stanley Steemer, this Court should vacate the default and default judgment.

**3. Gonzalez will not be prejudiced if she must litigate, on the merits, the causation and damages elements of her negligence claim.**

The "setting aside of a judgment must result in greater harm than simply delaying resolution of the case." *Knoebber*, 244 F.3d at 701; *see also Bateman v. U.S. Postal Serv.*, 231 F.3d 1220, 1225 (9th Cir. 2000) (no prejudice simply because a party loses a quick victory due to an opponent's procedural default and must litigate on the merits). The prejudice inquiry instead turns on whether the plaintiff's "ability to pursue [their] claim will be hindered." *Knoebber*, 244 F.3d at 701. To be considered prejudicial, "the delay must result in tangible harm such as loss of evidence, increased difficulties of discovery, or greater opportunity for fraud or collusion." *Id.* And a plaintiff is prejudiced only if they have no other recourse without a default judgment. *Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986); *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002).

Nothing has changed since this Court entered a default judgment. Only two months have passed. The evidence and witness testimony are still fresh. Gonzalez can still litigate her claim on the merits. And she still has a remedy if this Court vacates the default judgment—a jury verdict awarding damages. So she cannot show prejudice. Because all three good-cause factors favor Stanley Steemer, this Court should vacate the default and default judgment.

**C. This Court should vacate the default and default judgment because Stanley Steemer informally appeared and was entitled to notice under Rule 55.**

This Court should vacate a default and default judgment if the plaintiff was required, but failed, to give notice that they were moving for default. *Roxford Foods*, 12 F.3d at 879. A party must give notice to any party that has appeared in the action. *See* FED. R. CIV. P. 55(b)(2)

(requiring notice of a motion for default judgment if a party has appeared); LCR 55(b)(4) (same).

This notice requirement does not protect only parties that have formally appeared. A default judgment "must normally be viewed as available only where the adversary process has been halted because of an essentially unresponsive party." *H.F. Livermore Corp. v. Aktiengesellschaft Gebruder Loepfe*, 432 F.2d 689, 691 (D.C. Cir. 1970); *see also Key Bank of Me. v. Tablecloth Textile Co.*, 74 F.3d 349, 351 (1st Cir. 1996) (vacating default judgment for lack of notice). So notice must be given to "parties who, although delaying in a formal sense by failing to file pleadings within the twenty-day period, have otherwise indicated to the moving party a clear purpose to defend the suit." *Livermore*, 432 F.2d at 691. In *Livermore*, the appellate court held that the district court erred in refusing to vacate a default judgment where the defendant, without formally appearing, had made clear by negotiations that it intended to defend against the suit if necessary. *Id.* at 692.

The Ninth Circuit followed *Livermore* in *Roxford Foods* and held that a defendant's contacts that suffice to show a "clear purpose" to defend can constitute an informal appearance, requiring notice. *Roxford Foods*, 12 F.3d at 879. District courts in this Circuit have applied *Roxford Foods* and found that a defendant had informally appeared where they had settlement negotiations with a plaintiff before the plaintiff sought a default judgment. For example, this Court has found that a defendant's preliminary discussions about settlement with a plaintiff constituted an informal appearance. *Nw. Administrators, Inc. v. Ace Paving Co., Inc.*, No. C09-0185, 2009 WL 10741033, at *2 (W.D. Wash. June 4, 2009).

Similarly, here, Stanley Steemer and Gonzalez were negotiating when she sought default and default judgment. *Enneking Decl.* ¶¶ 4–11, 19–25. They had been negotiating for a year and had already settled St. John's property-damage claim. *Id.*; *Heim Decl.* ¶ 7. Stanley Steemer's representative, Continental, had been actively investigating Gonzalez's personal-injury claim. *Enneking Decl.* ¶¶ 4–11, 19–25. And its offer to settle that claim was pending

when Gonzalez sought default and default judgment. *Enneking Decl.* ¶¶ 4–11, 19–25. Multiple times, Continental had followed up with Gonzalez's counsel to negotiate. *Id.* But they never responded. *Id.* ¶¶ 9–11, 20, 22, 24–27. Instead, they moved for default and default judgment—without notice.

Gonzalez should have told Stanley Steemer or its representative that she was moving for default and default judgment. Even if this Court does not agree that Stanley Steemer's communications constituted an informal appearance, justice and fairness still required Plaintiff to have notified Stanley Steemer or its representative. *Radack v. Norwegian Am. Line Agency, Inc.*, 318 F.2d 538, 542 (2d Cir. 1963) (explaining that district courts have "a grand reservoir of equitable power to do justice in a particular case"). She did not, so this Court should vacate the default and default judgment.

## IV. CONCLUSION

Stanley Steemer has shown good cause to vacate the default and the $5.186 million default judgment. All three good-cause factors favor Stanley Steemer: (1) Stanley Steemer was not culpable because its failure to formally appear was unintentional, (2) Stanley Steemer has meritorious defenses to Gonzalez's negligence claim, and (3) Gonzalez will not be prejudiced if she must defend this case on the merits. And the default and default judgment should also be vacated because Gonzalez was required, but failed, to give Stanley Steemer or its representative notice of seeking default and default judgment.

DATED: September 12, 2025.

CARNEY BADLEY SPELLMAN, PS

By: */s/ Rory D. Cosgrove*
Rory D. Cosgrove, WSBA No. 48647
Jason W. Anderson, WSBA No. 30512
Ashley D. Burman, WSBA No. 58754

701 Fifth Avenue, Suite 3600
Seattle, Washington 98104
(206) 607-8020

WILSON, ELSER, MOSKOWITZ,
EDELMAN & DICKER LLP

By: */s/ Rachel Tallon Reynolds*
Rachel Tallon Reynolds, WSBA No. 38750
Dirk J. Muse, WSBA No. 28911
Natasha A. Fingar, WSBA No. 62842

520 Pike Street, Suite 2350
Seattle, Washington 98101
(206) 709-5900

*Attorneys for Defendant Stanley Steemer International, Inc.*