UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| B.G., a minor, by and through her parent and legal guardian, TIFFANY ST. JOHN, <br><br> Plaintiff, <br><br> v. <br><br> STANLEY STEEMER INTERNATIONAL, INC., <br><br> Defendant. | CASE NO. 2:24-cv-02105-TL <br><br> ORDER ON MOTION TO SET ASIDE DEFAULT JUDGMENT |

This matter is before the Court on Defendant's Motion to Set Aside Default Judgment. Dkt. No. 22.[1] Having considered the motion, Plaintiff's response (Dkt. No. 28), Defendant's reply (Dkt. No. 30), and the relevant record, and finding oral argument unnecessary, *see* LCR 7(b)(4), the Court GRANTS the motion.

---

[1] Defendant captioned its motion as "Defendant's Motion to Vacate Entry of Default and Default Judgment Under Rule 55(c) and Rule 60(b)." Dkt. No. 22. To comport with language used in the Federal Rules of Civil Procedure, the Court refers to Defendant's motion as a "Motion to Set Aside Default Judgment." *See* Fed. R. Civ. P. 55(c) ("Setting Aside a Default or a Default Judgment").

ORDER ON MOTION TO SET ASIDE DEFAULT JUDGMENT – 1

## I.    BACKGROUND

### A.    Factual Background

This is a negligence action arising from a motor vehicle accident that took place in 2023. The Court recited the facts that gave rise to this litigation in a prior order. *See* Dkt. No. 18 (Order on Motion for Default Judgment) at 1–3.

### B.    Procedural Background

On December 19, 2024, Plaintiff, then a minor, filed a civil action by and through her parent and legal guardian. Dkt. No. 1 (Complaint). Plaintiff alleged a single cause of action—negligence—under Washington state law. *See id.* ¶¶ 20–25. Defendant did not appear or answer the complaint, and on January 24, 2025, Plaintiff moved for an entry of default against Defendant. Dkt. No. 10. On January 29, 2025, the Court entered Defendant into default. Dkt. No. 12.

On April 29, 2025, Plaintiff moved for default judgment and requested that the Court award her $5,875,000 in damages. Dkt. No. 15. On July 3, 2025, the Court granted Plaintiff's motion and awarded Plaintiff $5,185,673.46 in total damages. Dkt. No. 18. On August 12, 2025, the Court entered judgment. Dkt. No. 19.

On September 12, 2025, counsel for Defendant appeared. Dkt. Nos. 20, 21 (notices of appearance). That same day, Defendant filed the instant motion to set aside the Court's judgment. Dkt. No. 22. On September 29, 2025, Plaintiff opposed Defendant's motion (Dkt. No. 28), and on October 3, 2025, Defendant filed a reply (Dkt. No. 30).

## II.    A WORD ON PROFESSIONALISM

As a preliminary matter, the Court finds it necessary to admonish Plaintiff's counsel for their unprofessionalism and incivility. Plaintiff's opposition to Defendant's motion is unhelpfully inflammatory (*see, e.g.*, Dkt. No. 28 at 16 (characterizing Defendant's position as "a bunch of

boilerplate pablum")), and Plaintiff's reliance on colored underscoring, **boldface,** and **underscored boldface** type is in equal parts hectoring and distracting.[2] *See, e.g.*, *id.* at 8, 14. Counsel is drafting a legal brief, not an item for the front page of some tabloid publication. Moreover, Attorney David P. Moody's tactical decision to respond to a September 29, 2025, letter from Defendant's counsel ("September 2025 Letter") with a three-sentence handwritten taunt scrawled across the letter in bright blue marker, featuring red wiggly underlining and an oversized frowny face—complete with black eyebrows and blue irises—beggars belief. *See* Dkt. No. 31-1 at 10. Moody used *three* different pens on this. Above the face, in oversized manuscript, Moody wrote, "We are confident the Court will not vacate the Judgment." *Id.* Now, litigation need not be a solemn slog, but it demands at least a modicum of maturity and restraint. Prematurely celebrating victory, particularly when binding precedent instructs the Court to be "solicitous" toward your opponent's position and describes their burden to carry the motion as "minimal," *see United States v. Signed Pers. Check No. 730 of Yubran S. Mesle*, 615 F.3d 1085, 1089, 1094 (9th Cir. 2010) [hereinafter *Mesle*], demonstrates a lack of judgment and professionalism.

Plaintiff's counsel, both of whom are members of the Washington State Bar, have taken the Oath of Attorney and promised to "abstain from all offensive personalities." Washington State Bar Ass'n, Oath of Attorney ¶ 7, https://admissions.wsba.org/getpdfform.action?id=720 [https://perma.cc/5CNX-5KGS]. Moreover, the preamble to the Washington Rules of Professional Conduct ("RPC") warns in its preamble that "[a] lawyer should demonstrate respect

---

[2] Nor does it escape the Court's attention that Plaintiff's briefing dramatically opens with a one-sentence paragraph—"The rules in this Court are clear" (Dkt. No. 28 at 5)—then proceeds, over some 15 pages, to repeatedly and consistently flout a clear directive from the Court. "Citations . . . must be included in the body of the briefing, not in footnotes or endnotes[.]" Tana Lin, Standing Order for All Civil Cases § II.A (last updated June 1, 2026); *see also* Dkt. No. 9 (Minute Order directing Parties to review Chambers Procedures).

ORDER ON MOTION TO SET ASIDE DEFAULT JUDGMENT – 3

for the legal system and for those who serve it, including . . . other lawyers[.]" RPC Preamble ¶ 5. Finally, Plaintiff's counsel are reminded that the Introduction to the Local Civil Rules of this District alert all counsel that "[t]he judges of this district expect a high degree of professionalism from the lawyers practicing before them. . . . There should be no difference between the professional conduct of counsel when appearing before the court and when engaged outside it whether in discovery or any other phase of a case." LCR Introduction at 1. Moody's response to the September 2025 Letter in particular falls below the expectations of attorneys set forth in the Bar Association's Oath of Attorney, as well as the governing rules of both this State and this District.

Moreover, the Court is troubled by assertions that Plaintiff's counsel—this time, Attorney Ryan Pittman—made in a declaration (Dkt. No. 11) in support of Plaintiff's motion for entry of default judgment (Dkt. No. 10). Counsel averred that, as of January 24, 2025, "Defendant ha[d] not contacted counsel for Plaintiff or appeared in this action." Dkt. No. 11 ¶ 7. This is technically true in as much as, to that point, Defendant had relied on its insurer to engage with Plaintiff's mother and Plaintiff's counsel, a reasonable arrangement given that Plaintiff and her mother had filed casualty claims against Defendant, and Defendant's insurer was working with them and their counsel to resolve them. *See* Dkt. No. 23 (Enneking Decl.) ¶¶ 4–25. But while technically true, Plaintiff's representations hid from the Court material facts regarding the true circumstances that preceded Defendant's default. Between June 21, 2023, and December 26, 2024, Plaintiff's insurer, "Plaintiff, and Plaintiff's counsel exchanged correspondence via email and phone at least 35 times. The topics of this correspondence included payment for property damage to [Plaintiff's mother's] vehicle; Plaintiff's medical bills, diagnoses, and treatment; status requests; and a settlement offer by [Defendant's insurer]." *Id.* ¶ 6. Indeed, at the time Plaintiff moved for default judgment, Defendant had tendered, through its insurer, a $25,000

ORDER ON MOTION TO SET ASIDE DEFAULT JUDGMENT – 4

offer to settle Plaintiff's personal-injury claim against Defendant. *See id.* ¶ 11. This fact is particularly problematic for Plaintiff, who asserted in her motion for default judgment, "If [Plaintiff's] motion for default judgment is not granted, she will have no recourse for recovery[.]" Dkt. No. 15 at 16. Given the pending $25,000 offer to settle, this assertion was dubious at best.

Defendant has not moved for sanctions. Therefore, the Court will not consider them at this time, especially given that the counsel's assertions, while misleading, were not plain misrepresentations of fact. But Plaintiff's counsel are reminded that they owe the Court a duty of candor. Particularly here, "[i]n an ex parte proceeding"—as Plaintiff's motions for entry of default and default judgment were—"a lawyer shall inform the tribunal of *all material facts known to the lawyer* which will enable the tribunal to make an informed decision, whether or not the facts are adverse." *Campbell v. Rice*, 408 F.3d 1166, 1175 (9th Cir. 2005) (Ferguson & Reinhardt, JJ., dissenting) (alteration in original) (quoting ABA Model Rules of Professional Conduct Rule 3.3(a)(4)(d) (2002)).

The Court trusts that it will not have cause to revisit these issues over the remaining duration of this litigation.

### III.    LEGAL STANDARD

"The court may set aside an entry of default for good cause, and it may set aside a final default judgment under Rule 60(b)." Fed. R. Civ. P. 55(c). "The 'good cause' standard that governs vacating an entry of default under Rule 55(c) is the same standard that governs vacating a default judgment under Rule 60(b)." *Franchise Holding II, LLC. v. Huntington Rests. Grp., Inc.*, 375 F.3d 922, 925 (9th Cir. 2004). In the Ninth Circuit, "as a general matter, Rule 60(b) is 'remedial in nature and must be liberally applied.'" *TCI Grp. Life Ins. Plan v. Knoebber*, 244 F.3d 691, 695–96 (9th Cir. 2001) (citation modified) (quoting *Falk v. Allen*, 739 F.2d 461, 463

(9th Cir. 1984)), *overruled on other grounds by Egelhoff v. Egelhoff ex rel. Breiner*, 532 U.S. 141 (2001).

"To determine 'good cause', a court must 'consider three factors: (1) whether the party seeking to set aside the default engaged in culpable conduct that led to the default; (2) whether it had no meritorious defense; or (3) whether reopening the default judgment would prejudice' the other party." *Mesle*, 615 F.3d at 1091 (citation modified) (quoting *Franchise Holding II*, 375 F.3d at 925–26). "[A] finding that any one of these factors is true is sufficient reason for the district court to refuse to set aside the default." *Id.* But "[c]rucially, . . . 'judgment by default is a drastic step appropriate only in extreme circumstances; a case should, whenever possible, be decided on the merits.'" *Id.* (quoting *Falk*, 739 F.2d at 463). "Accordingly, the 'rules for determining when a default should be set aside are solicitous towards movants.'" *Sundberg v. Shelton Sch. Dist. No. 309*, No. C23-5717, 2024 WL 3818544, at *2 (W.D. Wash. Aug. 14, 2024) (quoting *Mesle*, 615 F.3d at 1089). That is to say, "District courts should 'resolve[] all doubt in favor of setting aside the entry of default and deciding the case on its merits.'" *Id.* (alteration in original) (quoting *O'Connor v. Nevada*, 27 F.3d 357, 364 (9th Cir. 1994)).

## IV.   DISCUSSION

### A.   Defendant's Evidence

Before turning to the three good-cause factors, the Court will address Defendant's observation that Plaintiff neglected to challenge or rebut any of Defendant's evidence proffered in support of its motion. *See* Dkt. No. 30 at 1. A review of Plaintiff's response brief bears this out: Plaintiff does not dispute any of the factual bases that Defendant has provided to explain its conduct. *See generally* Dkt. No. 28. Consequently, Defendant argues, "All that evidence is now unrebutted and undisputed." *Id.* The Court agrees, at least for the purpose of deciding the instant motion. "In evaluating a defendant's alleged culpability, courts are to accept the defendant's

ORDER ON MOTION TO SET ASIDE DEFAULT JUDGMENT – 6

uncontested factual allegations accompanying the motion to set aside default as true." *Francois & Co. v. Nadeau*, 334 F.R.D. 588, 596 (C.D. Cal. 2020) (citing *Falk*, 739 F.2d at 464). Because the Court agrees with Defendant that its factual allegations have gone uncontested, the Court credits Defendant's narrative regarding its nonresponse to Plaintiff's lawsuit.

**B.      Good Cause**

The Court now considers the three good-cause factors—culpability, meritorious defense, and prejudice—in turn.

### 1.      Culpability

"[A] defendant's conduct is culpable if he has received actual or constructive notice of the action and *intentionally* failed to answer." *Mesle*, 615 F.3d at 1092 (alteration in original) (quoting *Knoebber*, 244 F.3d at 697). However, "in this context the term 'intentionally' means that a movant cannot be treated as culpable simply for having made a conscious choice not to answer; rather, to treat a failure to answer as culpable, the movant must have acted with bad faith." *Id.* Some examples of bad faith include "an 'intention to take advantage of the opposing party, interfere with judicial decisionmaking, or otherwise manipulate the legal process.'" *Id.* (quoting *Knoebber*, 244 F.3d at 697). Ninth Circuit courts will abide quite a lot before characterizing something as bad faith. "[S]imple carelessness," without more, "is not sufficient to treat a negligent failure to reply as inexcusable[.]" *Id.* The Ninth Circuit "ha[s] 'typically held that a defendant's conduct was culpable for purposes of the good cause factors where there is no explanation of the default inconsistent with a devious, deliberate, willful, or bad faith failure to respond.'" *Id.* (citation modified) (quoting *Knoebber*, 244 F.3d at 698). This is, indeed, a high bar to clear. Unless the Court finds that Defendant's good-faith explanation for its default (*see* Dkt. No. 22 at 10–11) is wholly implausible, the Court cannot consider Defendant to have been culpable.

ORDER ON MOTION TO SET ASIDE DEFAULT JUDGMENT – 7

Here, Defendant's explanation is quite plausible. It supports a finding that the default was neither devious, nor deliberate, nor willful. In a detailed declaration, D. Ryan Jankowski, Defendant's Vice President of Legal Affairs and Chief Administrative Officer, explains Defendant's nonresponse. *See generally* Dkt. No. 26 (Jankowski Declaration). On December 26, 2024, Plaintiff served Defendant with her civil complaint. *Id.* ¶ 3. That same day, Jankowski received a copy of the complaint. *Id.* Also on December 26, 2024, Defendant alerted its insurer, Continental Casualty Company ("Continental"), about the lawsuit and sent Continental a copy of the summons and complaint. *Id.* ¶ 4; *see* Dkt. No. 24-1 at 25–36 (email with attached complaint). This fact is crucial, because it demonstrates Defendant's intent to participate and defend itself in this litigation.

Defendant's advising Continental about the case should have represented the first step taken toward Defendant's participation in the lawsuit. As Jankowski explains, because of: (1) Continental's past practice in handling such matters for Defendant; and (2) the terms of Defendant's policy with Continental, Defendant "believed that Continental would retain counsel to defend [Defendant] in this lawsuit, including by answering Plaintiff's complaint and engaging in discovery." *Id.*; *see id.* ¶¶ 4e–4g (describing Continental's handling of other personal-injury lawsuits filed against Defendant); *see also* Dkt. No. 26-1 (insurance policy) at 4 (explaining Continental's right and duty to defend Defendant in litigation). In short, "[Defendant] reasonably believed that Continental would retain litigation counsel—as it had done in other cases. It had no reason to think that Continental would not." Dkt. No. 22 at 11.

In support of its position, Defendant provides declarations from two Continental employees, claims consultant Gary Enneking (Dkt. No. 23) and "Auto Physical Damage" adjuster Jaime Heim (Dkt. No. 24). Both Enneking and Heim worked to resolve claims associated with the motor vehicle accident that gave rise to this case—Plaintiff's mother's

property-damage claim (which was settled without litigation) and Plaintiff's personal-injury claim (which was not). Of particular relevance here, the testimony of Enneking and Heim indicates that the errors that led ultimately to Defendant's default were attributable to Continental, not Defendant. For example, in describing the process by which Defendant engages with Continental for litigation, Enneking asserted that "all legal papers forwarded to Continental, including complaints filed against its insureds, must be saved into the file." Dkt. No. 23 ¶ 16. Enneking asserted further:

> [W]hen I am forwarded a complaint for personal injuries or otherwise notified that a complaint for personal injuries has been filed against one of Continental's insureds, I as the lead claims consultant must verify the service date to our insured, compare the named defendant to our named insured for coverage verification, summarize the complaint details in the file, identify jurisdiction, and contact local defense counsel to be retained. This process is completed immediately.

*Id.* ¶ 17. This testimony, read together with Continental's contractual duty to defend (*see* Dkt. No. 26-1 at 4), indicates that, after Defendant notified Continental about Plaintiff's lawsuit, it was Continental's responsibility to coordinate a legally sufficient response.

In this case, "at 8:08 p.m. on December 26, 2024, a compliance analyst for [Defendant] sent [Heim] an email, entitled 'Seattle Accident,' and attached a copy of Plaintiff's complaint." Dkt. No. 24 ¶ 10. Heim asserts that she "do[es] not recall ever receiving or seeing this email." *Id.* Consequently, "that complaint was never saved internally in Continental's files." *Id.* ¶ 12.[3] But the email—and the attached complaint—had been sent. *See* Dkt. No. 24-1 at 25. Heim's testimony indicates that, with respect to Continental's coordination of Defendant's response to

---

[3] Heim suggests that Stanley Steemer should have sent this email to Enneking, not her. *See* Dkt. No. 24 ¶ 10. Plaintiff, however, does not pursue this point or attribute any significance to it. That is, Plaintiff does not identify what could be considered to have been a mistake on Defendant's part as something that should render Defendant culpable. The Court will not take up this argument on Plaintiff's behalf.

ORDER ON MOTION TO SET ASIDE DEFAULT JUDGMENT – 9

Plaintiff's lawsuit, the established system broke down almost immediately: The all-important email—which the record clearly indicates was sent on December 24, 2024 (*see id.*)—went overlooked, as did Plaintiff's complaint. Such a breakdown, however, does not appear to have been Defendant's fault.

For her part, Plaintiff focuses on two issues: Defendant's knowledge of the case and Defendant's position as a sophisticated litigant. As to the first issue, Plaintiff asserts, "It is not disputed that Defendant received actual notice of the Summons and Complaint." Dkt. No. 28 at 6. "At least five of Defendant's employees knew about this lawsuit," Plaintiff argues. *Id.* at 10. "**Defendant knew about this lawsuit.**" *Id.* "Defendant knew exactly what it was doing—and chose to do nothing." *Id.* at 11. With this last assertion, Plaintiff flies too close to the sun. As demonstrated by Defendant's unrebutted evidence, Defendant did *not* know "exactly" what it was doing. Continental's actions had deviated from standard operating procedure regarding its handling of lawsuits against its insureds, and what Defendant thought it knew—that its insurer was fulfilling its contractual duties to defend it—turned out to be false. Moreover, "cho[osing] to do nothing" is not the only relevant aspect of culpability. As discussed above, there must also be bad faith. On this point, Defendant's assertions that—default notwithstanding—it was acting in good faith, are unrebutted. As for Plaintiff, rather than engage with Defendant's narrative—or attempt to demonstrate that Defendant's story is indicative of "a devious, deliberate, willful, or bad faith failure to respond," *Mesle*, 615 F.3d at 1092—Plaintiff asserts, and re-asserts, that all that the Court needs to consider is Defendant's failure to answer or appear. *See, e.g.*, Dkt. No. 28 at 5, 9. This is not the law.

As to the second issue—regarding Defendant's sophistication as a litigant—although Plaintiff is correct that a defaulting party's relative sophistication may inform the Court's evaluation of its culpability, *see Knoebber*, 244 F.3d at 699 n.6, Plaintiff presents no authority to

ORDER ON MOTION TO SET ASIDE DEFAULT JUDGMENT – 10

demonstrate that the Court should consider such sophistication to be more important than a complete absence of evidence of bad faith. Even if Defendant were the most sophisticated and experienced litigant in the United States, it is difficult to see how such sophistication would have resulted in *Continental's* proper handling of Plaintiff's complaint, or insulated Defendant from Continental's mistake. Continental was the weak link here, and that is where the chain broke. Moreover, in a further mix-up beyond Defendant's control, the record indicates that a scrivener's error in the Clerk's office resulted in a misspelling of Defendant's name—as "*Stanely Steemer*"—on the docket. *See generally* Docket. As a result, the Court's Public Access to Court Electronic Records ("PACER") system—which is how Defendant tracks litigation—did not properly list Defendant as a party to this case. *See* Dkt. No. 22 at 11.

Therefore, Defendant has demonstrated a lack of culpability sufficient to warrant vacating the default judgment.

### 2.    Meritorious Defense

"All that is necessary to satisfy the 'meritorious defense' requirement is to allege sufficient facts that, if true, would constitute a defense[.]" *Mesle*, 615 F.3d at 1094. Defendant's burden here is "minimal." *Id.* The Ninth Circuit has explained that when evaluating a meritorious defense, "[t]he underlying concern . . . is to determine whether there is some possibility that the outcome of the suit after a full trial will be contrary to the result achieved by the default." *Hawaii Carpenters' Tr. Funds v. Stone*, 794 F.2d 508, 513 (9th Cir. 1986).

Defendant carries its burden. With respect to the negligence claim at issue in this case, Defendant has conceded duty and breach while contesting causation and damages. *See* Dkt. No. 22 at 11. The issue, then—as Defendant frames it—is "whether a jury might award different damages." *Id.* In considering the instant motion, the Court will limit its evaluation to Defendant's challenges to the causation element of the claim. After all, given Defendant's "minimal" burden,

if there is just one crack there, then the entire structure can be condemned without further inspection. *See, e.g.*, *Gardner v. Health Net, Inc.*, No. C10-2140, 2011 WL 13269707, at *4 (C.D. Cal. Apr. 25, 2011) (finding that presentation of meritorious defense to causation element would be sufficient to set aside entry of default).[4]

Defendant points to several of Plaintiff's medical conditions that pre-dated the accident—prior concussions, anxiety, ADHD, and alcohol use disorder. *See id.* at 12. Defendant substantiates the existence of these pre-existing conditions with citations to the record. *See id.* (citing Dkt. Nos. 16-2 (Singh Expert Report), 16-4 (Urquiza Expert Report)). Further, Defendant presents photographic evidence showing minimal damage to Plaintiff's mother's vehicle. *See* Dkt. No. 22 at 4. The evidence is certainly thin and does not dispositively disprove causation. Upon consideration of the instant motion, however, the Court need not consider what a jury might make of such evidence, but rather whether it might make anything of it at all. *See Hawaii Carpenters' Tr.*, 794 F.2d at 513.

For her part, Plaintiff's discussion of this factor gets off to a rather poor start. Plaintiff asserts, archly, that "Defendant seeks to vacate this Default Judgment on the possibility a jury *could* award less." Dkt. No. 28 at 5. This is meant to condemn Defendant's argument as misguided and misinformed, but it is, however, precisely the standard that the Court applies. *See Hawaii Carpenters' Tr.*, 794 F.2d at 513. That Defendant frames its argument in alignment with Ninth Circuit precedent is neither foolhardy nor remarkable.

Plaintiff's additional arguments fare no better. Plaintiff goes on to characterize Defendant's references to evidence in the record as mere "[a]ttempts to poke holes in the evidence provided by [Plaintiff]." Dkt. No. 28 at 14. "This," Plaintiff argues, "is not enough." *Id.*

---

[4] Accordingly, the Court will not address Defendant's meritorious defense, as it relates to damages (*see* Dkt. No. 22 at 12–13), or Plaintiff's response thereto (*see* Dkt. No. 28 at 15–18).

ORDER ON MOTION TO SET ASIDE DEFAULT JUDGMENT – 12

Plaintiff also asserts that "Defendant's claims of a 'meritorious defense' are unspecific and without support." *Id.* at 15. The Court disagrees. Defendant does not merely "poke holes" here and there; it establishes a position of its own. Indeed, Defendant refers to and draws upon specific facts found in Plaintiff's expert reports. And Plaintiff's suggestion that Defendant has presented nothing more than "[a] 'mere general denial without facts to support it'" (*id.* at 14 (quoting *Franchise Holding II*, 375 F.3d at 926)[5]) is simply not accurate. For example, where Plaintiff has claimed that the accident led to alcohol use disorder (*see* Dkt. No. 15 (motion for default judgment) at 13), Defendant's citation to evidence indicating that "[Plaintiff] started drinking at fourteen—two years before the accident" (Dkt. No. 22 at 12)—is specific and relevant. It would not be unreasonable for a jury to consider that the cause of Plaintiff's alcohol use disorder might not be an accident that occurred years after Plaintiff, then seven years shy of legal drinking age, began consuming alcohol.

Therefore, Defendant has presented a meritorious defense sufficient to warrant vacating the default judgment.

### 3.      Prejudice

Plaintiff does not dispute Defendant's assertion that "she cannot show prejudice" (Dkt. No. 22 at 13) regarding a potential vacatur of the judgment. "She does not argue that vacating the entry of default and default judgment would prejudice her ability to prosecute this case." Dkt. No. 30 at 4–5. The Court concurs and treats Plaintiff's silence as a concession that Defendant's assertions on the issue have merit. *See Rintoul v. Old Dominion Freight Line, Inc.*, No. C21-1733, 2024 WL 2974469, at *2 (D. Or. June 13, 2024) ("Generally, the failure to respond to an argument on its merits is grounds for deeming that argument abandoned or

---

[5] Plaintiff quotes this passage twice, attributing it both to *Franchise Holding II* and to *Akkelian v. Gevorkyan*, 833 F. App'x 467, 468 (9th Cir. 2021). Dkt. No. 28 at 14. However, the latter case does not include this quote.

ORDER ON MOTION TO SET ASIDE DEFAULT JUDGMENT – 13

conceded." (citing *Ramirez v. Ghilotti Bros.*, 941 F. Supp. 2d 1197, 1210 & n.7 (N.D. Cal. 2013) (collecting cases))).

Therefore, Defendant has satisfactorily demonstrated that Plaintiff will not be prejudiced by vacatur of the default judgment.

\*      \*      \*

Defendant has satisfied the three good-cause factors. Therefore, it is appropriate to vacate the entry of default (Dkt. No. 12) and default judgment (Dkt. No. 19).

## V.    CONCLUSION

Defendant's Motion to Set Aside Default Judgment (Dkt. No. 22) is GRANTED. It is hereby ordered:

(1)    The Entry of Default (Dkt. No. 12) is VACATED.

(2)    Default Judgment (Dkt. No. 19) is VACATED.

(3)    The Clerk is DIRECTED to re-open this case.

(4)    The Clerk is DIRECTED to correct the spelling of Defendant's name on the docket.

(5)    Defendant SHALL file a responsive pleading **within twenty-one (21) days** of this Order.

Dated this 17th day of June 2026.

Tana Lin
United States District Judge

ORDER ON MOTION TO SET ASIDE DEFAULT JUDGMENT – 14